[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR CONTEMPT
The marriage of the parties was dissolved on April 19, 1977 (Hull, J.). At the time of the decree there were four minor children issue of the marriage ranging in age from 11 to 16 years.
As part of the decree, the court ordered the defendant to pay the plaintiff $700 per week unallocated alimony and support, plus 50% of his discretionary bonus within 10 days of his receipt thereof. After August 10, 1987 the defendant was ordered to pay the plaintiff $20,000 per year as alimony or 20% of his gross annual income, whichever is greater.
From 1977 through 1986, the defendant received what he has characterized as a "grossed up" or "miscellaneous" bonus. He testified that this smaller bonus was paid to him by his employer North American Philips Corporation (NORELCO), to assist him in paying taxes on his discretionary (the larger) bonus. No portion of this grossed-up or miscellaneous bonus was paid to the plaintiff by the defendant. The plaintiff claims she is entitled to 50% of this "grossed-up" or "miscellaneous" bonus. CT Page 2867
 I
On the defendant's March 15, 1977 financial affidavit filed at the time of trial, the defendant referred to his bonus as "discretionary." No mention was made by the defendant of the additional smaller bonus paid to the defendant later in the year. The Memorandum of Decision indicates that although the defendant is not contractually entitled to the bonus, it is basically an expected and foreseeable part of his compensation package.
The trial court was concerned over the needs of the plaintiff and the four minor children. The trial court did refer to the defendant's larger bonus as discretionary. However, the second smaller bonus the defendant received was also a discretionary bonus, and not one that the defendant was contractually entitled to from his company.
In examining defendant's Exhibit G, the company did not distinguish between discretionary bonus and miscellaneous or grossed-up bonus, but rather included the two sums under the column entitled "bonus."
The additional bonuses received by the defendant between the years 1978 and 1986 were part of the defendant's discretionary bonus. They were a part of his compensation package and treated by the company as bonus.
Because the defendant has put another name on this amount does not make it any the less a bonus paid by the company, not on a contractual bonus, but in its discretion.
The company did not differentiate between "discretionary" bonus and "miscellaneous (grossed-up)" bonus. (Defendant's Exhibit G) Both sums were part of the defendant's compensation package that the defendant was entitled to, not by contract, but in the discretion of the company.
This court finds that the plaintiff is entitled to 50% of the additional bonuses paid to the defendant for the years 1977 through 1986. The total additional bonuses received by the defendant during the period 1977 through 1986 total $82,000 (Defendant's Exhibit E and Defendant's Exhibit H). The plaintiff is entitled to 50% of this amount, that is $41,000.
 II
In October 1986, the defendant, at age 59 was forced to retire from his employment at NORELCO. The defendant negotiated CT Page 2868 at length to obtain the best possible financial severance package as a result of his termination. The defendant was able to work out a financial package in which he was to be paid $65,000 the first year and $50,000 per year for 5 years thereafter for consulting services.
According to plaintiff's Exhibit One, the defendant requested that the verbiage be changed from bonus to consulting fee with respect to the first payment of $65,000. Although the defendant requested the verbiage change, the defendant had anticipated and expected he would continue to receive the same benefits that were accorded a bonus. (Plaintiff's Exhibit 1, 2, 4 and 5)
Defendant's Exhibit G (letter of February 16, 1990) was prepared and written long after NORELCO acceded to the defendant's request and changed the verbiage from bonus to consulting fee.
Based on all the evidence as presented, testimony and exhibits, the court finds that the payment of $65,000 was a bonus and the plaintiff is entitled to 50% of the $65,000 payment, that is $32,000.
The court finds that it was the defendant's election to call this fee a consulting fee, rather than a bonus. (Plaintiff's Exhibit 2, Plaintiff's Exhibit 1)
 III
Commencing August 10, 1989, the trial court ordered the defendant to pay the plaintiff $20,000 per year as alimony or 20% of his gross annual income, whichever is greater. On October 1987, the defendant exercised certain stock option benefits amounting to approximately $184,000. The plaintiff claims she is entitled to a portion of this amount and that the stock option benefits are to be included in the defendant's annual income.
In the context of the memorandum, the orders of the court were based on the defendant's yearly salary. The court referred to the defendant's yearly income as his salary from his employment with NORELCO. The trial court expected the defendant's income from salary ( bonuses) to increase, which it did, over the course of the years.
The stock option benefits were solely in the defendant's name and were listed as such in the defendant's financial affidavit, dated March 15, 1977. Had the trial court desired to fashion some award of any portion of the benefits of the defendant's stock options, it would have done so. The trial CT Page 2869 court's memorandum was carefully and meticulously thought out and it completely covered and analyzed all the assets of the parties. The stock option plan might also be considered a fringe benefit to the defendant from his employment.
The stock option benefits are not considered wages for purposes of social security — and further, the benefits were received by the defendant as a result of his forced termination from NORELCO in October 1986.
The court finds that the benefits the defendant received from the exercise of his stock options are not included in the defendant's income for 1987, for purposes of determining alimony to be paid to the plaintiff after August 10, 1987.
Defendant's Exhibits C and Defendant's Exhibit E, prepared by the defendant, indicate his salary for 1987 was $196,000. From August 10, 1987 to December 31, 1987 there are 143 days. The defendant's gross income thus, works out to $536.98 per day:
$536.98 x 143 days = $76,789.04
20% x 76,789.04 (Aug. 10 — Dec. 31, 1987) = $15,357.80
 Due Jan. 1, 1987 to Aug. 10, 1987 ($700 a week x 20 weeks) + 22,400.00
Total obligation for 1987 $37,757.80
The defendant has paid total alimony for 1987 in the amount of $33,858:
Thus, total obligation for 1978 $37,757.80
Amount paid by defendant 33,858.00
due to plaintiff for 1987 $ 3,899.80
 IV
The Memorandum of Decision provided that after August 10, 1987 the defendant pay the plaintiff $20,000 per year as alimony in equal monthly payments or 20% of his gross annual income, whichever is greater. Any adjustment upward was to be made within 30 days of defendant's filing his federal income tax return for the previous year, but in no event later than May 15th in each year.
The court was referring to the defendant's income/earnings from NORELCO. The defendant's total financial package from CT Page 2870 NORELCO for 1988 was his annual pension benefit of $110,875 plus a refund of contributions in the amount of $58,240 plus a consulting fee of $50,000 for the calendar years 1988 through 1992. At least for the year 1988, the plaintiff would be entitled to 20% of the above figures which total $219,115 or $34,540.60. The defendant is entitled to a credit for any sums he as already paid toward his alimony obligation for 1988, as well as for 1989 and 1990. According to defendant's Exhibit I, the defendant paid $31,172 for 1988 and $31,182 for 1989 leaving a balance of $3,368 due for 1988 and $3,358 for 1989[1]. The year 1990 shall be similarly treated.
The parties shall have three weeks from date to work out a payment schedule for the payment of all the arrearage as found by the court. The payment schedule shall be approved by the court, and this court retains jurisdiction to so approve the schedule.
The court does not find a willful contempt on the part of the defendant and no finding of contempt is made by the court.
No counsel fees are awarded.
COPPETO, J.